JOHN INGRAM V. THE STATE.

No. 15999.  Delivered May 31, 1933.
Reported in 61 S. W. (2d) 101.

The opinion states the case.

*Roy. Carpenter,* of Andrews, and *Oliver Cunningham* and *J. F. Cunningham,* both of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for arson; punishment, two years in the penitentiary.  This is the second appeal.  See 47 S. W. (2d) 285.

Appellant's wife had a house in Abilene, Texas, which was insured at the time it burned.  Without setting out the facts at length, they seem conclusively to show that the house was set fire to.  The only question of fact was, Who did it?  Appellant made a written statement after being duly warned, and also as a witness in his own behalf swore to substantially the following

matters: Said house was vacant and he was helping put same in shape to rent, and in his efforts went to the house Tuesday afternoon before the fire, carrying a lot of curtains which he seems to have put up on all the windows on the south side of the house, and also to have fastened some kind of covering on the west windows of the southwest room. The house faced west and had neighbors on its south side and across the street. The fire seems to have originated in the southwest room. On Friday night following said Tuesday, at about 9 o'clock, according to the testimony of appellant, he and his wife went to said premises in their car, both went in, and for two or more hours both worked at paper hanging in the southwest room, after which they drove to their home in another part of town. Appellant further claimed that his wife had before that sought to have him burn this house for her on the ground that it was encumbered and she would never be able to pay it out, and that she had four children by a former husband to keep in school, etc., that he had refused to burn it, but agreed to help her fix it up so she could rent it. He testified that after they got home on this Friday night she renewed her insistence that he help her burn said house, and when he again refused she got mad, got up and began putting on her clothes, telling him that she would get some one who would help her. He asked her who, and she said it was none of his damned business. He asked her if she purposed to get her former husband, who lived in Abilene and came to see his children once a week, and she again said it was none of his damned business and left. He said he did not see her again until 5 or 6 o'clock next morning; that he learned during that day that the house was burned.

Among other things pointing to an incendiary fire, the fire marshal testified that upon the alarm at 2:15 a. m. Friday he went at once to the house. Aside from the fact that oil was on the floor and a kerosene odor in the southwest room, and paper was scattered here and there in said room, this witness said he found an alam clock in said room nailed to the floor with a burned piece of fishing line wound around the winder of said clock; also three triggers were not far away, around one of which was another burned fishing line corresponding in kind to that on the clock winder; also about fifteen inches from the clock was a lantern without a globe. The hands of the clock had stopped at 2:15.

Appellant admitted in his testimony that he and his wife had the clock mentioned at said house for use in telling them the time; also that they had the lantern there for furnishing light by which they could see to paper the house, and that when

they left the house about 11:30 or 12 p. m. on that Friday night they left both articles in said southwest room, but he denied nailing the clock to the floor, or having knowledge of the triggers, or of the contrivance by which the fire could have been caused at 2:15 a. m. Appellant's wife did not testify, nor did her former husband. We find in the record no bills of exception.

Four exceptions were leveled at the court's charge, one of which was based on the proposition that the court should not have allowed the state to ask appellant, while on the witness stand, if he did not know that under the law his wife could not testify against him, etc. We can not consider such exception in the absence of a bill of exception showing that in fact such question was asked and objected to. Another exception was to the giving of a charge on principals, the objection being that such charge was not applicable to the facts. We would not be inclined to agree with appellant on his contention that it was not applicable to the facts, but note that when the court came to apply the law to the facts he restricted the jury's finding of guilt entirely to what appellant himself actually did and made no application of the law of principals. Such procedure seems novel and probably not commendable, but we are unable to see how possible injury could have resulted. We shall later revert to the facts bearing out the theory of principals.

If the charge as submitted to appellant for exception, did not contain an instruction that conviction could not be had even though they found that appellant and his wife had agreed to commit the offense before it was committed, if they further found that before its commission appellant abandoned the enterprise or conspiracy, all of which appears from another exception, then the exception was rendered unavailing because the charge was thereafter amended and this proposition written in, as same appears in the charge in the record.

We find no such blending of the charge on circumstantial evidence with that on principals as could mislead the jury or operate to appellant's injury.

Going back, some one set fire to this building which belonged to appellant's wife, and was insured in her behalf for some nine hundred dollars over the amount of the encumbrance. Whoever did the work had a carefully prepared and thought-out program, whose execution called for preparation, planning and testing of the apparatus, as well as the use of the alarm clock and some fire carrying vessel which would burn after the designer was safe and away. According to appellant's testimony he and his wife took the clock and the globeless lantern

to the place and left them there about midnight. He would have the jury believe that as a result of his virtuous refusal to assist his wife in burning the house, she declared her purpose to "Get some one who would," and put on her clothes and left, and that he did not see her again until after the time when the fire occurred. Evidently the intended inference from this, if true, would be that either the wife alone, or some one at her insistence, or acting with her, thought out the program, prepared the triggers, connected them with the clock, and set the whole machinery in motion very quickly indeed, and set the unnecessarily early hour of 2:15 for the going off of the alarm, a much shorter time than would have ordinarily been fixed if the parties had only begun their project of preparation after 12 o'clock. Probably the jury were not ready to say this would have been impossible, but it seems they preferred the easier and better supported route of not accepting appellant's story, and of believing that when he put up the curtains before papering the house in order to have plenty of time to prepare his incendiary machinery, and that when he used a lantern without a globe he did not do this to assist him in the rather delicate work of paper hanging at night, but more likely to set fire to the paper, etc., which would be precipitated by the going off of the alarm clock and the pulling of the triggers mentioned. We are unable to say that the conclusion of the jury was not well supported, and that from the evidence it would appear that appellant, or appellant and his wife, acting through the contrivance mentioned, even though physically absent, set fire to the house.

Being unable to agree with appellant, and finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*